The next case for oral argument this morning is Bell v. Hepp, 21-2819. Good morning. Good morning, Your Honors, and may it please the Court. My name is Margo Jasekaitis, arguing today on behalf of petitioner-appellant Mr. Bell. This case is about whether Mr. Bell received a fair trial. He didn't. During closing, statements made by the prosecutor inappropriately narrowed the question before the jury to, fundamentally, this. Did the defendant present evidence that the sisters were lying? If not, Mr. Bell is guilty. That's plainly wrong. And, indeed, as Justice— Ms. Jasekaitis, before we—oh, sorry. No, the Wisconsin Supreme Court has already answered this question. That's correct, Your Honor, though there was debate at the Wisconsin Supreme Court about whether Mr. Bell received a fair trial, and Justice Ann Walsh Bradley, in dissent, pointed out that these statements constitute a clearly improper argument that shifts the burden of proof from the government to the defendant and abrogates the presumption of innocence to which Mr. Bell is entitled. I'll also note that there are cases that say where there is disagreement about this kind of constitutional issue at the state court level, it is appropriate for federal courts to review. On direct appeal? Well, I wouldn't categorize this as a direct appeal. Mr. Bell filed his habeas petition in the Eastern District of Wisconsin, and this is an appeal from the denial of that petition. The Eastern District— So, on the Antiterrorism and Effective Death Penalty Act, what is the starting point of review for this court? The starting point of review, this court will look at the last state court to review the merits. So you look at that Wisconsin State Supreme Court decision. And that standard under AEDPA does require that—or I should say relief is appropriate under AEDPA, where the state court's decision is contrary to or represents an unreasonable application of clearly established law. And I would— Supreme Court precedent. And have you identified those cases for the court? Two points in response to that, Your Honor. I think the principles at the heart of this appeal are clearly established to the extent, one, that they are so fundamental. The prosecutor's statements implicated Mr. Bell's right to remain silent, flipped the presumption of innocence, and shifted onto Mr. Bell a burden of proof that at all times— Before we can reach the merits of that, I need to—you need to give me the Supreme Court precedent that's guiding us to be able to review that Wisconsin Supreme Court case. So can you give me those cases? Yes. So when we look at Supreme Court precedent in Marshall v. Rogers, that's 569 U.S. 58, 2013, that case says that under AEDPA, the Supreme Court—circuit courts, rather, can look to their own precedent to identify if something has already been deemed clearly established for AEDPA purposes. And in this court, we look at cases like, for example, Vargas, which states plainly that prosecutors cannot tell a jury that there is only one way to acquit. Is Marshall v. Rogers in line with Supreme Court holding in Parker? Your Honor, candidly, I am not sure. I am happy to follow up and provide to the court information about that. So if we— Before we go too much further into the merits, given the briefing, I just want to confirm that you agree that AEDPA deference does guide our review here. Yes, I think that's correct, and we maintain that Mr. Bell has satisfied that review is appropriate under that standard. And again, I think one of the reasons that review is not only appropriate under AEDPA, but that on the merits, you can find that these statements were improper and denied Mr. Bell a fair trial. As I said before, the prosecutor's comments really implicate some of these fundamental bedrock principles of criminal defense, of criminal trials. We are looking at, for example, the burden of proof and who bears that burden. It is fundamental that the state at all times bears the burden of proof to prove guilt beyond a reasonable doubt. And the prosecutor's statements in closing here shifted that burden on to Bell when the prosecutor pointed out to the jury that, for example, there is no testimony that the sisters were lying, there is no evidence they were lying. First, I'll note that that's factually inaccurate. There were serious questions about whether the sisters in this case were telling the truth. Mr. Bell's counsel in closing pointed out a series of inconsistencies in their statements. And in fact, earlier in his closing, the prosecutor acknowledged that there was evidence showing the sisters had a reason to lie about at least some material parts of their testimony. And so by obligating Mr. Bell to produce evidence, or even more harmfully, to testify that the sisters had a reason to lie, the state shortcut its own burden. Is there a Supreme Court case that shows that the state's course determination in a particular factual context was unreasonable? This case, I think, like most, is specific to its facts. And so we are unaware of a Supreme Court case that has precisely these facts. But I, again, point to, one, we know that the prosecutor's statements were improper under that standard and martial that allows this court to look at its own precedent. And then in cases like Vargas and others that are clear, the prosecutor cannot say there's only one way to acquit. And so when we're looking at this idea that the state has shifted the burden onto Mr. Bell, I think one thing that it's also important to touch on is what we mean when we say that we believe what the sisters are saying. Because part of the problem with the prosecutor's statements is that he was imprecise in his language and said simply, talked generally, I should say, about believing the girls. But, of course, that's not what the law requires the state prove. The state needed to prove beyond a reasonable doubt the truth of each material facet of the sisters' testimony. And by narrowing the inquiry to simply whether Mr. Bell had produced evidence that the sisters had a reason to lie, well, for starters, whether or not the sisters had reason to lie isn't dispositive of whether they were telling the truth as a general matter. And it's certainly not dispositive of whether Mr. Bell is guilty, that is, whether the state has met its burden to prove guilt beyond a reasonable doubt. I also want to touch on the other category of statements that Mr. Bell challenges, what we in the courts below refer to as the must-believe statements. These are problematic on their own, but particularly when taken together to the kinds of statements we've been talking about, those motive statements. Is Brecht v. Amberson applicable in the case? I think that Brecht discusses whether the harmless error standard – I read Brecht, I should say – to discuss whether the harmless error standard applies when the issue is whether the prosecution's use of that post-Miranda silence to impeach warrants habeas relief. If it talks about which version of the harmless error standard to apply, it is not clear to me that it applies directly to this case, partially because we are not dealing with the post-Miranda silence impeachment direct factual context. And so I wouldn't necessarily categorize that as a one-to-one analogy. I'll also point out, I know in the state's brief when they are discussing Brecht, they also cite Rhodes v. Dittman, which does point out that the appeals court can look at harmless error even when the state court has not reached that issue, which is admittedly true here. That Wisconsin State Supreme Court said that they did not find the statements improper, which we of course disagree with, but then because of that, they failed to reach the Darden factor analysis as to harmless error. So I see I'm into my rebuttal time. I'll reserve the rest unless there are other questions. Okay, thank you. Yeah. Mr. O'Brien? May it please the Court. Assistant Attorney General for the State of Wisconsin, Daniel O'Brien, appears on behalf of Respondent Randall Hell. If the Court will indulge me, I'd like to start my argument with three very brief quotes. Quote number one is from Darden v. Wainwright, the case that Mr. Bell has argued appears to be the one analogous Supreme Court decision that controls here. And that quote is, quote, it is helpful as an initial matter to place these remarks in context. Quote number two is from the Wisconsin Supreme Court, paragraph 18. It is fair to say that in evaluating Mr. Bell's claim, context is everything. And finally, quote number three comes from Mr. Bell's reply brief at page 12. The outcome of this case is not dictated by a definitive Supreme Court decision. The facts of this case are unique. When you add those three statements together, it's clear that Mr. Bell has not pointed to any clearly established United States Supreme Court precedent that would lead any fair-minded jurist to disagree with the Wisconsin Supreme Court when it said the prosecutor's argument either was not improper at all or, if it was, that it denied Mr. Bell a fair trial. I would encourage this court to compare the closing argument in this case with the universally condemned closing argument in Darden v. Wainwright that, despite its condemnation, the United States Supreme Court held did not deny Mr. Darden a fair trial. That argument, if you look at the footnotes in the Darden decision, the excerpts in that argument are really chilling, the least of which the prosecutor called the defendant an animal who should be on a leash held by a prison guard, and he wished he had had his face shot off by the victim. That argument did not, the Supreme Court held, violate Mr. Darden's right to a fair trial. Certainly, this argument, which really, in essence, was just to bolster the credibility of these victims who were called by the defendant compulsive liars and who compared his trial to the Salem witch trial. Mr. O'Brien, some of these statements went beyond just bolstering credibility, though. What concerns me is that there were statements made in closing about if the defendant is not guilty, you'd have to believe this, which seems to be shifting the burden because the question is not does the defendant have to prove or does the evidence have to show the defendant is not guilty. As you know, the question is has the state proven its case beyond a reasonable doubt. But I think, again, if you look at the entirety of the argument as well as the context of the trial, what the prosecutor was really saying here was that for you to disbelieve these girls, and again, this was all about their credibility, this was a black and white case. The defense wasn't that, well, they're mistaken or they might be telling the truth, but not enough. It was they're lying. And the prosecutor's response was, in essence, for you to disbelieve these girls, you have to believe that they've been lying from day one to everybody, that they're great actors when they cry in court. But, Mr. O'Brien, wasn't the contention was that if you don't believe, in order to acquit the defendant, you have to believe that the girls are lying? Is that not a misstatement of the law? Because there are two girls involved here. What if I believed one and not the other? Was there any physical evidence introduced at trial? The only physical evidence, there was a medical exam of one of the girls who did not have an intact hymen. So it was proof, not that he assaulted her, but that she had sexual intercourse with someone at some point. And, of course, at the time she was only, I believe, 13 or 14. So that's the physical evidence. But, again, you have to understand that this attack, again, the defense is painting this as they were making this up. And, basically, what the prosecutor's saying, to believe that, you have to believe that they've been holding this big lie, the two of them made up this big lie, and they've been pushing it through family members, social workers, police, and to you, the jury. You have to believe that, that they're great actors. That's what the argument was. And if you believe that, then acquit. But, otherwise, believe the girls, and if you believe them, you have enough beyond a reasonable doubt to find them guilty. That's really the essence of what this argument was, especially given the context where it was not a reasonable doubt case. It was not a case where we're not sure what happened, but the state failed to prove its case, which you often see in these kinds of cases. This was a comparison to the Salem Witch Trial. Look at Mr. Bell's closing argument to the jury. He goes on and on about these children in 1692 who lied, and these people, 25 people, were hanged. That's what he compared this case to. I understand that might have been the prosecutor's intent, but his wording was, for the jurors who voted to acquit, you would have to believe or must believe that the sisters were lying about the assaults. That's the language that was used, and my question to you, Mr. O'Brien, let me word it a different way. Is that the standard for an acquittal? No, but I think, again, the defense took it upon itself to prove that they were lying. In the cross, and not only in its opening statements, during Vaudeer, the defense explored why teenagers might lie about sexual assault. During cross-examination, he attacked these girls, trying to prove that they had motives to lie, and really didn't get anywhere with it. And in that context, you're saying to believe, and maybe rather than say to believe the girls, to believe the defense theory that they're compulsive liars, you have to believe all of these other things. You have to believe that despite their consistency, despite the fact that their stories corroborated each other, even though there were things that they didn't know about each other's assaults, the fact that they remained steadfast, that you'd have to disbelieve all that and find that they didn't tell the truth. Before you can find they didn't tell the truth. So you can lift a statement out of context. Mr. O'Brien, I have a question for you. In the Darden case, if we make it to step two, why should this court not grant habeas relief when it seems like those factors would be applicable, or at least weigh in Bell's favor? Well, again, I would ask you please to put this closing argument side by side with the closing argument in Darden. And if that didn't deny due process, this certainly did, or at least a fair-minded jurist could say so. A fair-minded jurist could say that the Wisconsin Supreme Court was not wrong, or if it was wrong, it at least was reasonable in assessing this argument in its proper context, which was an all-out assault on the credibility and character of these two teenagers. And that was the response, and it was I maintained highly— But it's one thing to attack the credibility. What concerns me are the statements of the prosecutor that really come close to shifting the burden that the defendant would have to prove they were lying. But again, this is a case where the defendant assumed the burden of trying to prove they were lying. And I don't think it's— But regardless of the cross-examination, the government can never argue that the defendant has taken on a burden to prove he's not guilty. No, but again, in this context of a black and white, either they're telling the truth and you're not guilty, or you are guilty, or they're lying and you're not guilty. And again, let's not forget the jury was properly instructed on the reasonable doubt burden to prove, on the fact that motives for falsifying testimony are relevant, on the fact that the arguments of counsel are not evidence, and that you should follow the instructions. And the prosecutor concluded his argument by saying, Please follow the instructions. Please believe these girls and find Mr. Bell guilty. And so the jury had everything it needed. And so we don't—Darden doesn't allow you to lift a phrase out of context. I think the trial judge made a cogent comment when he decided to deny the post-conviction motion and said, Closing arguments are not works of art. And I think my colleague here said something about imprecise verbiage. That's what we're talking about here. In context, the Wisconsin Supreme Court reasonably determined that this did not deny Mr. Bell a fair trial. Thank you, Mr. O'Brien. Ms. Jessikaitis, your rebuttal. Thank you, Your Honors. Just a few points in rebuttal here. I want to call the court's attention to the statement in the Wisconsin State Supreme Court's opinion that I think crystallizes the problem with the prosecutor's statements and with the state court's blessing of those statements. The Wisconsin State Supreme Court said that Mr. Bell needed to win acquittal by convincing the jury that the sisters lied. That's plainly wrong. No fair-minded jurist could disagree that that misstates the burden of proof and negates Mr. Bell's presumption of innocence. My colleague focuses on Darden, rightly, and I would like to touch briefly on that second step of the Darden analysis and those factors. As you noted, those factors in this case, I think, cut in favor of finding that Mr. Bell is owed a new trial. In fact, each of those factors comes out precisely the opposite way here that it did in Darden. I'll note, too, that the statements at issue in Darden are, of course, highly inflammatory, but I think the difference between those statements and those here is perhaps one of kind as opposed to one of degree. Certainly those are, as I said, reprehensible statements, but these are statements that, though facially perhaps are less emotionally driven, are equally problematic in that they undermine these fundamental principles. So I, in closing, will note that Mr. Bell's case was—Mr. Bell's jury was fundamentally misled by this prosecutor who created this formula for conviction that misstates the burden of proof. The statements were improper. They were not harmless, and Mr. Bell respectfully requests you grant his petition. Thank you. Thank you. The case will be taken under advisement.